**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

NATHAN A. COOK
VICE CHANCELLOR

LEONARD L. WILLIAMS JUSTICE CENTER
500 N. KING STREET, SUITE 11400
WILMINGTON, DELAWARE 19801-3734

Date Submitted: March 6, 2024
Date Decided: June 12, 2024

Andrew H. Sauder
Dailey, LLP
1201 N. Orange Street, Suite 7300
Wilmington, Delaware 19801

Rebecca L. Butcher
Jennifer L. Cree
Howard W. Robertson IV
Landis Rath & Cobb LLP
919 Market Street, Suite 1800
Wilmington, Delaware 19801

RE:  *Osios LLC (f/k/a Andover LLC) v. Tiptree, Inc., et al.*,
C.A. No. 2023-0589-NAC

Dear Counsel:

This letter addresses the defendants' motion to dismiss the plaintiff's claims (the "Motion"). For the reasons below, the Motion is granted in part and denied in part.

## I.    BACKGROUND

Defendant Tiptree, Inc. ("Tiptree") is a "publicly traded insurance holding company with a private investment arm" organized under Maryland law.[1] Defendant Tiptree Marine LLC ("Marine," and together with Tiptree, "Defendants") is a Delaware limited liability company and subsidiary of Tiptree.[2]

Stefanos Theodoros Kasselakis was the founder of "a series of successful maritime

---

[1] *Osios LLC (f/k/a Andover LLC) v. Tiptree, Inc.*, C.A. No. 2023-0589-NAC, Docket ("Dkt.") 1, Verified Complaint (the "Complaint" or "Compl.") ¶¶ 10, 22. At this motion to dismiss stage, I draw the relevant facts from the Complaint and documents that are "incorporated by reference" or "integral" to it. *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 320 (Del. 2004). Citations in the form "Tr. __" refer to the oral argument transcript from the hearing on March 6, 2024. Dkt. 32.

[2] Compl. ¶ 11.

businesses embedded within [Tiptree] and operated as Tiptree subsidiaries under the umbrella of [Marine]."[3] Kasselakis served as CEO of Marine from January 2018 until March 2023.[4] Plaintiff Osios LLC (f/k/a Andover LLC) ("Osios") is a New York limited liability company controlled by Kasselakis.[5]

Tiptree and Osios were Marine's main common unitholders, with Tiptree owning more than 99% and Osios owning less than 1% of Marine's common units.[6] "Marine had a three-Member Board of Managers whereby Tiptree controlled two of the Board seats, one of which was the Board Chairman position."[7] Kasselakis "held the remaining seat for the duration of his employment."[8]

Tiptree shared several key employees with Marine, including human resources, information technology, and accounting personnel, as well as corporate counsel.[9] For example, Tiptree's corporate counsel would submit Marine's regulatory filings, in addition to overseeing the preparation and documentation required for parties to acquire units in Marine.[10]

Section 3.12 of Marine's amended and restated limited liability company

---

[3] *Id.* ¶ 1.

[4] *Id.* ¶ 11.

[5] *Id.* ¶ 9.

[6] *Id.* ¶ 30; *see also* LLC Agreement at Schedule 3.1.

[7] Compl. ¶ 31.

[8] *Id.* ¶ 34.

[9] *Id.* ¶¶ 37–38.

[10] *Id.* ¶¶ 41–42.

agreement, dated June 1, 2019 (the "LLC Agreement"),[11] provides as follows:

> Each of [Tiptree] and [Osios] shall have the right, but not the obligation, at any time, to purchase and acquire up to that number of Common Units, in one or more transactions, that, in the aggregate, equals the aggregate purchase price set forth opposite such Committed Investor's Name on Exhibit B, calculated at a purchase price per Common Unit equal to the price at which the Company sold Common Units to [Tiptree] and [Osios] pursuant to the Tiptree Marine Purchase Agreement (such option, the "Additional Investment Option"). Concurrently with the exercise of the Additional Investment Option by a Committed Investor, such Committed Investor and the Company will enter into such agreements as are reasonably necessary to effect the purchase and sale of the Common Units pursuant to the Additional Investment Option and notice thereof will be given to the other Committed Investor. Any Common Units issued to a Committed Investor pursuant to the Additional Investment Option will be subject to the terms and conditions of this Agreement and have the rights and benefits provided for herein.[12]

On September 22, 2022, Tiptree's Deputy General Counsel, Siew Kwok, and Tiptree's Director of Tax, Ian Jones, informed Kasselakis that Marine would be making a distribution to its members "at the end of the Fiscal Quarter ending in September 2022."[13] During this call, Kasselakis "informed [] Kwok and [] Jones that he wanted to

---

[11] The Complaint provides that "[t]he Amended LLC Agreement is appended hereto as Exhibit 1." *Id.* ¶ 27. The Complaint filed on the docket, however, fails to include any exhibits. Nonetheless, the Complaint is replete with references to the LLC Agreement. The LLC Agreement is obviously integral to the Complaint and, having been submitted with Defendants' opening brief, may be considered in resolving the Motion. *Wal-Mart Stores*, 860 A.2d at 320.

[12] LLC Agreement § 3.12. As listed in Exhibit B, Tiptree was allowed to contribute up to an additional $15 million, while Osios was permitted to contribute up to an additional $2 million. *Id.* at Exhibit B. Prior to the events at issue, Tiptree had exercised the Additional Investment Option three times, maxing out the amount it could invest in additional units of Marine. Compl. ¶ 98.

[13] Compl. ¶ 103. According to Defendants, the distribution was timed to follow the sale of substantially all of Marine's assets. *See* Dkt. 17 ("Defendants' Opening Br.") at 2.

immediately exercise [Osios' Additional Investment] Option to purchase $2 million worth of [] Marine's Common Units in advance of the distribution, which would have entitled him to greater participation in it."[14]   Kasselakis then asked Kwok to send him the necessary agreements to effectuate the purchase.[15]   Kwok "said he would get back to Kasselakis."[16]

Two days later, Kasselakis again contacted Kwok to ask for the agreements.[17] Kwok then told Kasselakis that he "would not provide such agreements" and that Kasselakis needed to speak with the Defendants' shared General Counsel, Neil Rifkind.[18]

"In the following days," Kasselakis "met with [] Rifkind multiple times, both via Tiptree's corporate Microsoft Teams platform and in Tiptree's offices."[19]   Kasselakis "notified [] Rifkind that he had exercised the [Additional Investment] Option in his prior discussion with [] Kwok[] and [] required the agreements necessary to effectuate it."[20] Kasselakis "pointed [] Rifkind to the section of the LLC Agreement that provided for the [Additional Investment] Option exercise."[21]   Rifkind "responded to [] Kasselakis with

---

[14] *Id.* ¶ 105.

[15] *Id.* ¶ 107.

[16] *Id.* ¶ 108.

[17] *Id.* ¶ 112.

[18] *Id.* ¶¶ 113–14.

[19] *Id.* ¶ 115.

[20] *Id.* ¶ 116.

[21] *Id.*

words to the effect of 'I will look into this and get back to you.'"[22]

On September 26, 2022, Kasselakis emailed Tiptree's CEO, Jonathan Ilany, who had also served as a member of Marine's Board of Managers.[23] In his email, Kasselakis "inform[ed Ilany] that he wanted to exercise the [Additional Investment] Option, and request[ed] that [] Ilany direct [] Rifkind to send him the necessary agreements, which he had not yet received."[24] Ilany responded that he would look into it.[25]

On September 27, five days after the initial phone call, Kasselakis again met with Rifkind to request the agreements. Rifkind told Kasselakis that he "should talk to" Ilany and Tiptree's President, Randy Maultsby, who also held a seat on Marine's Board of Managers.[26] Kasselakis met with them the next day.[27]

At that meeting, Ilany and Maultsby informed Kasselakis that he could not exercise the Additional Investment Option because doing so was "'not in the spirit of the agreement,' that 'the money would just sit there,' and that 'this was meant more as a capital call if [] Marine needed more capital.'"[28] The Complaint alleges that "[a]t no point in this meeting did [] Kasselakis withdraw his exercise of the [Additional Investment]

---

[22] *Id.* ¶ 117.

[23] *Id.* ¶ 120.

[24] *Id.* ¶¶ 120–21.

[25] *Id.* ¶ 122.

[26] *Id.* ¶ 125.

[27] *Id.* ¶ 126.

[28] *Id.* ¶¶ 128–29.

Option."[29]

On October 11, 2022, Kasselakis asked Kwok why he had not sent the agreements.[30] Kwok replied that he was unsure why Kasselakis never received the agreements, but that Kwok had escalated the matter to Tiptree's management, who then made "a business decision."[31]

From October 2022 to March 2023, Kasselakis made several additional attempts to obtain the agreements, including a formal complaint to Maultsby, Tiptree's President and chairman of Marine's board.[32] On March 13, 2023, soon after Kasselakis refused to partner with Tiptree on a new business venture until Tiptree resolved his outstanding compensation issues, including his inability to exercise the Additional Investment Option, Marine terminated Kasselakis as its CEO.[33]

Osios filed its Complaint in this Court on June 2, 2023. The Complaint alleges six causes of action deriving from Defendants' refusal to allow Kasselakis to exercise the Additional Investment Option: (1) breach of contract against Tiptree and Marine, (2) unjust enrichment against Tiptree and Marine, (3) breach of the implied covenant of good faith and fair dealing against Tiptree and Marine, (4) breach of fiduciary duty against Tiptree, (5) aiding and abetting against several individual defendants, and (6)

---

[29] *Id.* ¶ 130.

[30] *Id.* ¶ 132.

[31] *Id.* ¶¶ 133–34.

[32] *See id.* ¶¶ 132–47.

[33] *Id.* ¶¶ 148–49.

tortious interference with contractual relations against Tiptree.[34] Osios further alleges that it suffered damages of at least $2.5 million as a result of not being permitted to exercise the Additional Investment Option.[35]

On June 29, 2023, Defendants filed the Motion to dismiss the Complaint.[36] On August 18, 2023, Defendants filed their opening brief.[37] On October 2, 2023, Osios filed both its answering brief in opposition to the Motion and a notice of voluntary dismissal of Count V, leaving only claims against Tiptree and Marine.[38] Defendants filed their reply on November 14, 2023.[39] I held a hearing on the Motion on March 6, 2024.

## II. ANALYSIS

When considering a motion to dismiss under Rule 12(b)(6), "(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are well-pleaded if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (i[v]) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof."[40]

---

[34] *Id.* ¶¶ 150–91.

[35] *Id.* ¶ 185.

[36] Dkt. 7.

[37] Dkt. 17.

[38] Dkt. 23–24.

[39] Dkt. 29.

[40] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (footnotes omitted).

I address each of Osios' claims in turn.

### A. Breach of Contract

I start with the breach of contract claim. "In order to survive a motion to dismiss for failure to state a breach of contract claim, the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff."[41]

As a preliminary matter, Osios asserts both Tiptree and Marine breached Section 3.12 of the LLC Agreement. Tiptree, however, does not have an affirmative obligation it can breach under Section 3.12. The breach claim against Tiptree is therefore dismissed. But I still consider the breach of contract claim as it relates to Marine.

"On a motion to dismiss, the Court must determine whether the contract contains 'plain and unambiguous' terms 'as a matter of law' to determine the absence of a breach."[42] "To be ambiguous, a disputed contract term must be fairly or reasonably susceptible to more than one meaning."[43] "Unless there is ambiguity, Delaware courts interpret contract terms according to their plain, ordinary meaning."[44] "A contract is not rendered ambiguous simply because the parties do not agree upon its proper

---

[41] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

[42] *Batty v. UCAR Int'l Inc.,* 2019 WL 1489082, at *3 (Del. Ch. Apr. 3, 2019) (quoting *In re Ronald J. Mount 2012 Irrevocable Dynasty Tr. U/A/D/ Dec. 5, 2012*, 2017 WL 4082886, at *2 (Del. Ch. Sept. 7, 2017)).

[43] *Alta Berkeley VI C.V. v. Omneon, Inc.*, 41 A.3d 381, 385 (Del. 2012).

[44] *Id.*

construction."[45]  "[C]ourts interpreting a contract 'will give priority to the parties' intentions as reflected in the four corners of the agreement, construing the agreement as a whole and giving effect to all its provisions.'"[46]  "In giving sensible life to a real-world contract, courts must read the specific provisions of the contract in light of the entire contract."[47]

The first sentence of Section 3.12 sets forth an option for Osios to purchase additional Common Units of Marine "at any time[.]"[48]  The second sentence of Section 3.12 describes Marine's obligation to enter into agreements "to effect" Osios' purchase pursuant to the option as "[c]oncurrent[] with the exercise" of the option.[49]  Boiled down, Osios' asserts that Marine improperly withheld, and refused to enter into, agreements with Osios to effect Osios' purchase of additional Common Units pursuant to the Additional Investment Option.

Marine presents a narrow basis for dismissal of Osios' breach of contract claim against it.  Marine argues that the claim must be dismissed because Osios does not plead

---

[45] *GMG Cap. Invs., LLC v. Athenian Venture Partners I, L.P.*, 36 A.3d 776, 780 (Del. 2012) (quoting *Rhone–Poulenc Basic Chems. Co. v. Am. Motorists Ins. Co.*, 616 A.2d 1192, 1195 (Del.1992)).

[46] *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016) (quoting *Salamone v. Gorman*, 106 A.3d 354, 368 (Del. 2014)).

[47] *PR Acqs., LLC v. Midland Funding LLC*, 2018 WL 2041521, at *6 (Del. Ch. Apr. 30, 2018) (quoting *Chi. Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 913–14 (Del. 2017)).

[48] LLC Agreement § 3.12.  The first sentence of Section 3.12 defines "such option" as the "Additional Investment Option."  *Id.*

[49] *Id.*

it delivered written notice to Marine in compliance with Section 14.3 of the LLC

Agreement.[50]  Section 14.3 provides:

> All notices and other communications required or permitted hereunder shall be (i) (a) in writing and shall be deemed effectively given upon personal delivery (which may be evidenced by a return receipt if sent by registered mail or by signature if delivered by courier or delivery service) or (b) sent by facsimile or by electronic mail and shall be deemed effectively given upon receipt of confirmation of delivery and (ii) addressed . . . if to [Marine] or to [Marine's] Board of Managers to it at the following address:
>
> c/o Tiptree Inc.
> [address omitted]
> Facsimile number: [number omitted]
> Attention: Neil C. Rifkind ([omitted]@tiptreeinc.com)[51]

Marine acknowledges Osios' allegations of substantial oral and written notice to the

senior leadership of Tiptree, who doubled as the senior management of Marine.[52]  There

is no pleading stage dispute that Marine had actual notice.  Marine argues that Section

14.3, however, required Osios to deliver written notice to Rifkind in the specific manner

set forth in the provision to trigger any obligation of Marine.

The parties devote significant argument to the interplay between Section 3.12

and Section 14.3.  Marine argues that Section 14.3 applies by the LLC Agreement's

plain terms.  Osios contests its applicability, and the parties lock horns over ambiguity.

Fairly read, I understand Marine's arguments to mean it was not obligated

under Section 3.12 to enter into agreements with Osios to effect Osios' purchase of

Common Units pursuant to the option until Osios first provided Section 14.3-compliant

---

[50] Defendants' Opening Br. at 12.

[51] LLC Agreement § 14.3.

[52] *See, e.g.*, Defendants' Opening Br. at 15–16; Tr. 18:18–23.

notice of Osios' *intent* to exercise under Section 3.12.[53]  Even assuming Marine is

correct, Marine's motion to dismiss must still be denied because Osios pleads facts

making it reasonably conceivable that Marine waived that requirement.[54]

"Under Delaware law, a waiver is 'the voluntary and intentional relinquishment

of a known right.'"[55]  "It is well settled in Delaware that contractual requirements or

conditions may be waived."[56]

In considering whether it is reasonably conceivable Marine chose to waive written

notice delivered to Tiptree at Rifkind's attention, it seems significant that the pled efforts

at exercise were met not with silence, but something quite different.  Defendants'

blended management, including Rifkind, responded they would "get back" to Kasselakis

---

[53] To the extent Marine argues Osios did not exercise via a Section 14.3-compliant writing, Marine does not grapple with the express description of Marine's "[c]oncurrent[]" obligation to enter into agreements with Osios "to effect" Osios' purchase—agreements that, it is reasonably conceivable, would satisfy the writing requirement and that Osios' alleges it repeatedly sought and Marine refused to provide.

[54] I therefore need not address, and express no view on, "substantial compliance" concepts in these circumstances.  *See, e.g.*, *Vintage Rodeo Parent, LLC v. Rent-a-Ctr., Inc.*, 2019 WL 1223026, at *15 (Del. Ch. Mar. 14, 2019) ("[T]his Court has, at times, accepted substantial compliance with notice provisions in lieu of literal compliance, when the circumstances so justified.  The Court's precedent on substantial compliance with notice provisions focuses almost entirely on the *manner* in which notice was provided.") (emphasis in original and citations omitted).  I also note that the LLC Agreement does not provide that any waiver must be in writing.  LLC Agreement § 13.4 ("The waiver of any of the provisions, terms or conditions contained in this Agreement shall not be considered as a waiver of any of the other provisions, terms or conditions hereof.").

[55] *Dirienzo v. Steel P'rs Hldgs. L.P.*, 2009 WL 4652944, at *4 (Del. Ch. Dec. 8, 2009) (quoting *Realty Growth Invs. v. Council of Unit Owners*, 453 A.2d 450, 456 (Del. 1982)).

[56] *AeroGlobal Cap. Mgmt., LLC v. Cirrus Indus., Inc.*, 871 A.2d 428, 444 (Del. 2005).

with a substantive response on Osios' exercise of the option.[57] And they did, with words that simultaneously rejected exercise and implicitly acknowledged Osios' technical entitlement to exercise.[58] Here, Osios does not simply plead facts reflecting substantial oral and written discussions suggesting actual knowledge, including Rifkind's, to whose attention Section 14.3 notice is directed. Osios also pleads facts requiring the pleading-stage inference that Marine, via Defendants' blended management, chose to waive Section 14.3-compliant notice, to promise a response, and to reject the attempted exercise of the option.

At the pleading stage, Osios' breach of contract claim against Marine survives the Motion, but its breach of contract claim against Tiptree is dismissed.

## B. Implied Covenant of Good Faith and Fair Dealing

I next address the claim that Defendants breached the implied covenant of good faith and fair dealing.

"To sufficiently plead breach of the implied covenant of good faith and fair dealing, a complaint 'must allege a specific implied contractual obligation, a breach of that

---

[57] *See, e.g.*, Compl. ¶ 108 ("Kwok said he would get back to [] Kasselakis."); *id.* ¶ 117 ("Rifkind responded to [] Kasselakis with words to the effect of 'I will look into this and get back to you.'"); *id.* ¶ 136 ("Ilany promised to get back to [] Kasselakis with a substantive response . . . ."); *id* ¶ 139 ("Smith said he would speak with [] Barnes and get back to [] Kasselakis about [the Additional Investment] Option.").

[58] *See id.* ¶¶ 128–29 (Ilany and Maultsby rejecting exercise because it was "not in the spirit of the agreement"); *id.* ¶ 134 (Kwok describing management's rejection as a "business decision"). Osios notes that Defendants originally did not assert the notice was deficient. Instead, the notice deficiency argument evolved with this litigation. Tr. 39:20–40:1.

obligation by the defendant, and resulting damage to the plaintiff.'"[59] But "implying obligations based on the covenant of good faith and fair dealing is a cautious enterprise."[60]

As I noted during the oral argument on this Motion, our case law suggests there are two strains of the implied covenant: (1) gap-filling and (2) protecting against arbitrary and bad faith exercise of discretion.[61] Under the first strain, the implied covenant is implicated when an agreement is truly silent on a term and requires a party to identify a gap in the contract to state a claim.[62] Under the second strain, the implied covenant is implicated when a party "is given discretion to act as to a certain subject and it is argued that the discretion has been used in a way that is impliedly proscribed by the contract's express terms."[63]

Here, I must dismiss Osios' implied covenant claim. First, for the reasons described above, Section 3.12 imposes no express contractual obligation on Tiptree. Having dismissed Osios' claim against Tiptree for breach of an express term above, Osios provides no reasoned basis for me to inject an implied obligation on Tiptree via the

---

[59] *Red Cat Hldgs., Inc. v. Autonodyne LLC*, 2024 WL 342515, at *10 (Del. Ch. Jan. 30, 2024) (quoting *Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *11 (Del. Ch. May 29, 2020)).

[60] *Cincinnati SMSA Ltd. P'ship v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998).

[61] *See Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1116 (Del. 2022).

[62] *See Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017).

[63] *Oxbow Carbon & Mins. Hldgs., Inc. v. Crestview-Oxbow Acq., LLC*, 202 A.3d 482, 504 n.93 (Del. 2019).

implied covenant.

Indeed, Osios' implied covenant claim against both Tiptree and Marine falls well short of the mark. Osios devotes only a single page of argument in its answering brief to its implied covenant claim. In doing so, it identifies no contractual gap or term the implied covenant would supply to fill that gap.[64] Similarly, Osios states that Defendants acted unreasonably and arbitrarily, yet fails to identify any discretion granted to Defendants under Section 3.12 of the LLC Agreement. Osios' implied covenant claim therefore must be dismissed.[65]

### C. Unjust Enrichment

I now address Osios' unjust enrichment claim against Tiptree and Marine. "While unjust enrichment may be pleaded as an alternative theory of recovery to a breach of contract claim, the right to do so 'does not obviate the obligation to provide factual support for each theory' independently."[66] To plead unjust enrichment, the plaintiff

---

[64] *See Red Cat Hldgs.,* 2024 WL 342515, at *11 ("Plaintiffs failed to identify any suitable contractual gaps for the implied covenant to fill. This deficiency alone can end my analysis. But even assuming Plaintiffs had identified some gap, they also do not plead any 'specific implied contractual obligation.'" (quoting *Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *11 (Del. Ch. May 29, 2020))).

[65] As noted above, deployment of the implied covenant is a "cautious enterprise." *Cincinnati SMSA Ltd. P'ship*, 708 A.2d at 992. The fact that this dispute concerns an option, the terms of which are, as Defendants note, generally strictly construed, makes me all the more reluctant to imply terms beyond those for which the parties expressly bargained. *See Simon-Mills II, LLC v. Kan Am USA XVI LP*, 2017 WL 1191061, at *30–31 (Del. Ch. Mar. 30, 2017) (citing Restatement (Second) of Contracts § 25 (Am. L. Inst. 1981)); 1 Williston on Contracts § 5:18 (4th ed. 2006).

[66] *Tygon Peak Cap. Mgmt., LLC v. Mobile Invs. Investco, LLC*, 2022 WL 34688, at *14 (Del. Ch. Jan. 4, 2022) (quoting *BAE Sys. Info. & Elec. Sys. Integration, Inc. v. Lockheed Martin Corp.*, 2009 WL 264088, at *8 (Del. Ch. Feb. 3, 2009)), *aff'd,* 2024 WL

must plead "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law."[67]

Osios has pled that Tiptree received a greater share of Marine's distribution;[68] the increase in distribution would have gone to Osios if it had been allowed to exercise the Additional Investment Option;[69] this greater share of the distribution is connected with Tiptree management's allegedly improper refusal to process Osios' attempts to exercise the Additional Investment Option;[70] and Tiptree's receipt of this additional percentage of the distribution was unjustified.[71]

Defendants dedicated a single page of their opening brief to refuting the unjust enrichment claim, stating only that it "should be dismissed because an enforceable contract governs the parties' relationship."[72] But "an unjust enrichment claim is not to be dismissed [simply] because it is pled in the alternative to the breach of contract claim."[73] And, given the dismissal of Osios' breach of contract and implied covenant

---

1448447 (Del. Apr. 3, 2024).

[67] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010).

[68] Compl. ¶ 160.

[69] *Id.* ¶ 162.

[70] *Id.*

[71] *Id.* ¶ 161.

[72] Defendants' Opening Br. at 19.

[73] *Breakaway Sols., Inc. v. Morgan Stanley & Co. Inc.*, 2004 WL 1949300, at *14 (Del. Ch. Aug. 27, 2004); *see also Garfield v. Allen*, 277 A.3d 296, 351 (Del. Ch. 2022).

claims against Tiptree, Osios' unjust enrichment claim against Tiptree is not duplicative. Osios' unjust enrichment claim against Tiptree therefore survives the Motion.

Although Osios has successfully pled an unjust enrichment claim against Tiptree, the allegations leave unexplained how Marine was enriched by failing to provide the agreements to Osios. Marine's actions did not lead to *Marine* receiving an additional benefit, but instead affected the share of the distribution to Tiptree.

The unjust enrichment claim against Marine is therefore dismissed but the claim against Tiptree survives the Motion.

### D. Breach of Fiduciary Duties

To state a claim for breach of fiduciary duty, a party must show "(1) that a fiduciary duty existed and (2) that the defendant breached that duty."[74] "The LLC Act provides that the fiduciary duties of a member, manager, or other person that is a party to or bound by a limited liability company agreement 'may be expanded or restricted or eliminated by provisions in the limited liability company agreement.'"[75] "Drafters of a limited liability company agreement 'must make their intent to eliminate fiduciary duties plain and unambiguous.'"[76]

---

[74] *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch.), *aff'd*, 11 A.3d 749 (Del. 2010).

[75] *Zimmerman v. Crothall*, 62 A.3d 676, 702 (Del. Ch. 2013) (quoting 6 *Del. C.* § 18-1101(c)).

[76] *Ross Hldg. & Mgmt. Co. v. Advance Realty Grp., LLC*, 2014 WL 4374261, at *12 (Del. Ch. Sept. 4, 2014) (quoting *Feeley v. NHAOCG, LLC*, 62 A.3d 649, 664 (Del. Ch. 2012)).

Section 12.8 of the LLC Agreement provides:

> To the fullest extent permitted by law, including Section 18-1101(c) of the [LLC] Act, and notwithstanding any other provision of this Agreement or applicable provisions of law or equity or otherwise, the parties hereto hereby agree that each Indemnified Person shall not owe any fiduciary duties to the Company, any Member or any other person or entity party to otherwise bound by this Agreement . . . ."[77]

Thus, if Tiptree is an "Indemnified Person," the LLC Agreement makes plain that it owes no fiduciary duties to Osios.

"'Indemnified Persons' has the meaning set forth in Section 12.1(a)" of the LLC Agreement.[78] Section 12.1(a), in turn, lists persons Marine shall indemnify "[t]o the fullest extent permitted by law[.]"[79] Immediately following the list, and in the same sentence, Section 12.1(a) provides: "all indemnified persons being referred to as 'Indemnified Persons' for purposes of this Section 12[.]"[80] Thus, if one is listed, one has the title of "Indemnified Person" under the definition set forth in the LLC Agreement.

---

[77] LLC Agreement § 12.8(a). The ellipsis above contains the proviso, consistent with Section 18-1101(c) of the LLC Act, "that the foregoing shall not eliminate the implied contractual covenant of good faith and fair dealing." *Id.*

[78] *Id.* at Exhibit 1.

[79] *Id.* § 12.1(a).

[80] *Id.* ("(i) each current or former member of the Board of Managers and each current or former officer of the Company and each Person who is or was serving at the request of the Company as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, including any direct or indirect subsidiary of the Company, in each case in such Person's capacity as such, and (ii) the Tax Matters Member in such Member's capacity as such, and each such Person's officers, managers, controlling persons, partners, members, shareholders, employees and Affiliates (all indemnified persons being referred to as 'Indemnified Persons' for purposes of this Section 12)").

The list includes "the Tax Matters Member in such Member's capacity as such[.]"[81] Section 10.1, in turn, provides that Tiptree—the majority holder—is the Tax Matters Member.[82] Although the LLC Agreement limits Tiptree's indemnification rights to actions in its capacity as the Tax Matters Member, its status as an "Indemnified Person" is not, under the definition in Section 12.1(a), subject to capacity testing. Tiptree is, therefore, an "Indemnified Person," and the parties expressly agreed in Section 12.8 of the LLC Agreement that Tiptree owes no fiduciary duties to Osios.[83]

Osios' attempts to prevent this conclusion by pointing to the LLC Agreement's separate exculpation provision. Section 12.2 provides no Indemnified Person shall be "liable, in damages or otherwise," for any loss arising out of an act performed or omitted if, among other things, the conduct "did not constitute fraud, gross negligence or willful misconduct by such Indemnified Person."[84] It seems Osios asserts the references to gross negligence and willful misconduct in the exculpation clause reimpose fiduciary duties on Tiptree as replacement contractual duties.

In making this argument, Osios relies heavily on this Court's decision in *In re*

---

[81] *Id.* § 12.1(a)(ii).

[82] *Id.* § 10.1(a).

[83] Had the parties waived fiduciary duties for Indemnified Persons acting in their capacity as such, this outcome would have been different. But rather than limit the fiduciary duty waiver to Indemnified Persons acting in their capacity as Indemnified Persons, the provision broadly eliminates fiduciary duties for all parties that have the title "Indemnified Person" under the LLC Agreement. As drafted, a party's status as an "Indemnified Person" is binary—a party either is an "Indemnified Person" or is not.

[84] *Id.* § 12.2.

*Cadira Group Holdings, LLC Litigation* denying a motion to dismiss.[85]  In *Cadira*, the Court analyzed a provision of an LLC agreement addressing fiduciary duties.  The first sentence set forth an agreed-upon statement of intent:  "It is the intent of this Section to restrict the liability and fiduciary duty of the Members and the Managers to the maximum extent permitted by applicable law."[86]  The next sentence, however, confusingly eliminated only "claim[s]" against members and managers that did not involve "bad faith, gross negligence, willful misconduct or actual fraud[.]"[87]  The Court concluded that, far from evincing a "'plain and unambiguous' intent fully to displace traditional fiduciary duties[,]"[88] the provision in *Cadira* expressly "green-li[t] claims" against the manager and, "as pled," the manager "owe[d] the default traditional fiduciary duties . . . ."[89]

Unlike in *Cadira*, Marine's LLC Agreement does not merely express an intent to restrict fiduciary duties and then set forth a limited and ambiguous waiver.  Instead, Section 12.8 expressly provides Tiptree "shall not owe any fiduciary duties" to Osios, both "[t]o the fullest extent permitted by law, including Section 18-1101(c) of the [LLC] Act," *and* "notwithstanding any other provision of [the LLC] Agreement[.]"[90]  Not only is

---

[85] 2021 WL 2912479 (Del. Ch. Jul. 12, 2021).

[86] *Id.* at *3.

[87] *Id.*

[88] *Id.* at *12.

[89] *Id.*

[90] LLC Agreement § 12.8(a).

Section 12.8 unequivocally plain and unambiguous, but its drafters made clear that it controls in the event of any arguable conflict.[91]

When parties "have invested in an alternative entity where the agreement waives fiduciary duties, then the [parties] accepted the risks associated with a purely contractual relationship."[92] So it is here. Osios' fiduciary duty claim against Tiptree must therefore be dismissed.

### E. Tortious Interference

"As a matter of law . . . contractually bound parties may not be liable for tortious interference."[93]

Tiptree, Marine, and Osios are all signatories to the LLC Agreement. The LLC Agreement sets forth the bargained-for obligations in respect of the Additional Investment Option. The LLC Agreement could have included contractual obligations owed by Tiptree to Osios with respect to the Additional Investment Option, but it did not. A party to a contract cannot, via a tortious interference claim against its contractual

---

[91] Even if Osios' fiduciary duty claim was not precluded by Section 12.8, I would still have questions about the viability of the claim given the contractual nature of the option and case law regarding fiduciary duties in related circumstances. *Cf. Bocock v. INNOVATE Corp.*, 2022 WL 15800273, at *27 n.171 (Del. Ch. Oct. 28, 2022) ("A claim for breach of fiduciary duty must be based on an actual, existing fiduciary relationship between the plaintiff and defendants at the time of the alleged breach." . . . "[T]he option feature of these instruments does not qualify for the protections that flow from a fiduciary duty." (citations omitted)).

[92] *Cygnus Opportunity Fund, LLC v. Washington Prime Grp., LLC*, 302 A.3d 430, 457 (Del. Ch. 2023).

[93] *Intel Corp. v. Fortress Inv. Grp., LLC*, 2021 WL 4470091, at *11 (Del. Ch. Sept. 30, 2021).

counterparty, "reap the benefits of protections that it did not obtain at the bargaining table."[94] As Osios and Tiptree are parties to the LLC Agreement, Osios is precluded from bringing its tortious interference claim against Tiptree in these circumstances. Accordingly, Osios' claim for tortious interference must be dismissed.

## III.    CONCLUSION

For the foregoing reasons, the Motion is granted in part and denied in part. The claims against Tiptree for breach of contract, breach of fiduciary duty, and tortious interference are dismissed. The claim against Marine for unjust enrichment and the claim against both Tiptree and Marine for breach of the implied covenant of good faith and fair dealing are also dismissed. The Motion is denied as to the claim against Marine for breach of contract and the claim against Tiptree for unjust enrichment.

IT IS SO ORDERED.

Sincerely,

*/s/ Nathan A. Cook*

Nathan A. Cook
Vice Chancellor

---

[94] *Bandera Master Fund LP v. Boardwalk Pipeline P'rs, LP*, 2019 WL 4927053, at *26 (Del. Ch. Oct. 7, 2019).